MISSOURI, K. & T. RY. CO. OF TEXAS et al. v. EMPIRE EXPRESS CO. †
(No. 7166.)

(Court of Civil Appeals of Texas. Dallas. Dec. 19, 1914. Rehearing Denied Feb. 6, 1915.)

1. CARRIERS ⊜⇒15—REGULATION—GRANTING OF FACILITIES TO EXPRESS COMPANIES.

Rev. St. 1911, art. 6616, requiring every railroad company operating a railroad within the state to furnish reasonable and equal facilities and accommodations and upon reasonable and equal rates to all corporations and persons engaged in the express business, is valid.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 25–27; Dec. Dig. ⊜⇒15.]

2. CARRIERS ⊜⇒19—ACTIONS FOR REFUSAL TO GRANT FACILITIES TO EXPRESS COMPANIES—CONDITIONS PRECEDENT.

Where an express company had demanded that a railroad company furnish it reasonable facilities for the doing of an express business over its lines equal to those furnished another express company, and this had been denied, and the railroad company had not at any time been willing to accept such express company's business upon any rates, a formal tender of its business was not necessary to enable it to recover damages resulting from the railroad company's failure to comply with Rev. St. 1911, art. 6616.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 33–49; Dec. Dig. ⊜⇒19.]

3. APPEAL AND ERROR ⊜⇒1073—HARMLESS ERROR—JUDGMENT—AMOUNT OF DAMAGES—DISTINGUISHING BETWEEN ACTUAL AND EXEMPLARY DAMAGES.

Where, in an action by an express company for damages from a railroad company's refusal to grant it reasonable facilities for doing business equal to those afforded another express company, the jury by their special findings found separately, and plaintiff's motion for judgment thereon stated separately, the actual and exem-

---

⊜⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

† Writ of error pending in Supreme Court.

plary damages and the judgment recited such motion and adjudged that it be sustained and that plaintiff recover from defendant an amount equal to the sum of the two items of damages, the failure of the judgment to state separately the amount of the actual and exemplary damages awarded was not reversible error, if error at all.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4240–4247; Dec. Dig. ⊙�longrightarrow1073.]

4. CARRIERS ⊙⟶19—DENIAL OF FACILITIES TO EXPRESS COMPANIES—DAMAGES.

Where a newly organized express company had not been engaged in the express business before seeking to do business over defendant's lines of railroad, and defendant accepted from it trucks to be used in its business for free transportation and distribution, and such acts were reasonably calculated to cause an ordinarily prudent person under the same circumstances to believe that defendant intended to permit the express company to engage in the express business over its lines, expenses incurred in reliance upon such action and losses sustained in getting ready to do an express business over defendant's lines before the express company became aware that defendant did not intend to permit it to do business consisting of expenses in caring for its horses and other property, the loss sustained by being deprived of the use of its property, the interest on money deposited with the clerk of the court in obedience to an order of the court as a means of securing the right to do business over defendant's lines and the amount paid to clerks, messengers, and other agents while not permitted to do business, were proper elements of damages and recoverable from the railroad company.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 33–49; Dec. Dig. ⊙⟶19.]

5. CARRIERS ⊙⟶19—DENIAL OF FACILITIES TO EXPRESS COMPANIES—DAMAGES.

Where a railroad company acted maliciously in refusing to permit an express company to transact business over its line of railroad after it had done acts indicating that it intended to permit the express company to engage in business over its lines, exemplary damages were properly awarded by the jury.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 33–49; Dec. Dig. ⊙⟶19.]

6. APPEAL AND ERROR ⊙⟶1052—HARMLESS ERROR—CURE BY JUDGMENT.

The erroneous admission of evidence as to an item of damages not properly recoverable was harmless, where the judgment included no sum for such item.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4171–4177; Dec. Dig. ⊙⟶1052.]

7. CARRIERS ⊙⟶19—DENIAL OF FACILITIES TO EXPRESS COMPANIES—EVIDENCE.

In an action by an express company for damages from a railroad company's refusal to grant it reasonable facilities for doing business equal to those afforded another express company, contracts with the railroad company, which the express company had offered to execute, covering the conduct of such business, were properly admitted to show what facilities and accommodations plaintiff had demanded and to show a willingness on plaintiff's part to obligate itself to operate on the same terms and conditions as the other express company.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 33–49; Dec. Dig. ⊙⟶19.]

8. CARRIERS ⊙⟶15 — EXPRESS COMPANIES — RIGHT TO DO BUSINESS ON RAILWAY COMPANY'S LINES.

Under Rev. St. 1911, art. 6616, an express company was not entitled to facilities and accommodations for doing business over a railroad company's lines equal to those afforded another express company, unless it was willing to obligate itself to perform the same services for the railroad company that such other express company performed under its contract with the railroad company.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 25–27; Dec. Dig. ⊙⟶15.]

9. CARRIERS ⊙⟶19—DENIAL OF FACILITIES TO EXPRESS COMPANIES—EVIDENCE.

In an express company's action for damages from the refusal of a railroad company to grant it reasonable facilities and accommodations for doing business equal to those afforded another company and to compel the furnishing of such facilities and accommodations, contracts between various railroad companies and express companies doing business over their lines, as filed with the Railroad Commission, were admissible to support the allegation of the petition that the usual and customary rate charged express companies by railroad companies was a percentage of the gross receipts derived from the express business.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 33–49; Dec. Dig. ⊙⟶19.]

10. EVIDENCE ⊙⟶341 — DOCUMENTARY EVIDENCE—CERTIFIED COPIES OF RECORDS.

Under Rev. St. 1911, art. 3694, providing that copies of the records of public officers certified to under the hand and seal of the lawful possessor of such records shall be admitted as evidence in all cases where the records themselves would be admissible, where contracts between railroad and express companies were competent evidence, certified copies thereof, as filed with the Railroad Commission pursuant to a rule requiring them to be filed, were admissible.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1289–1292; Dec. Dig. ⊙⟶341.]

11. APPEAL AND ERROR ⊙⟶1050—HARMLESS ERROR—ADMISSION OF EVIDENCE.

In an action for damages from a railroad company's refusal to furnish an express company facilities and accommodations for doing business and to compel the furnishing of such facilities, the admission of evidence, that after the institution of the suit and during the trial thereof plaintiff tendered express matter to the railroad company which it declined to accept, if inadmissible, was harmless, where the same facts were testified to by other witnesses without objection.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1068, 1069, 4153–4157, 4166; Dec. Dig. ⊙⟶1050.]

12. CARRIERS ⊙⟶14—FACILITIES TO EXPRESS COMPANIES—JOINT USE OF CARS.

An express company doing business over the lines of a railroad company had no exclusive right to the use of the cars set apart to it, where the exclusive use thereof was not essential to the conduct of its business; and hence where such cars were ample to accommodate both it and another express company seeking to do business over such lines, and the use thereof by both companies was practicable and would not create confusion, the railroad company was properly commanded to permit the use of such cars by such other express company.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. § 29; Dec. Dig. ⊙⟶14.]

13. CARRIERS ⊙⟶18—FACILITIES TO EXPRESS COMPANIES—ACTIONS—JUDGMENT.

In an action by an express company against a railroad company, a judgment, requiring the railroad company to permit the use by such express company jointly with another express company of cars previously in use by such other express company, was not broader than that

prayed for in the petition, which prayed for a writ of mandamus commanding the railroad company to furnish to plaintiff reasonable and equal facilities and accommodations upon reasonable and equal rates that it was furnishing to the other express company and for such other and further relief, general and special, as plaintiff might be entitled to under the law and the facts.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 13, 16–18, 20, 24; Dec. Dig. ☞18.]

Appeal from District Court, Hunt County; Wm. Pierson, Judge.

Action by the Empire Express Company against the Missouri, Kansas & Texas Railway Company of Texas and another. From a judgment for plaintiff, defendants appeal. Affirmed.

Chas. C. Huff and A. H. McKnight, both of Dallas, Dinsmore, McMahan & Dinsmore, of Greenville, and Baker, Botts, Parker & Garwood, of Houston, for appellants. J. E. Gilbert, of Dallas, and Clark & Leddy, of Greenville, for appellee.

TALBOT, J. The appellee brought this suit against the appellants, the Missouri, Kansas & Texas Railway Company of Texas, and the American Express Company, praying for a writ of mandamus requiring the said railway company to allow appellee to do an express business over its lines of railway in Texas, and to enjoin the American Express Company from interfering with appellee in conducting such business. The appellee also sought to recover damages, both actual and exemplary, from the appellant railway company. The suit is predicated upon articles 6616 and 6617 of the Revised Statutes of 1911, which read as follows:

"Art. 6616. Every railroad company operating a railroad within this state shall furnish reasonable and equal facilities and accommodations, and upon reasonable and equal rates, to all corporations and persons engaged in the express business, for the transportation of themselves, agents, servants, merchandise and other property, and for the use of their cars, depots, buildings and grounds and for exchanges at points of junction with other roads.

"Art. 6617. Any railroad company, which shall fail to comply with the provisions hereof, shall be liable to the aggrieved party, in an action on the case, for damages; and such railway company, in addition to liability to said action for damages, shall be subject to a writ of mandamus, to be issued by any court of competent jurisdiction, to compel compliance with the provisions of the preceding article; and the said writ of mandamus shall issue at the instance of any party or corporation aggrieved by a violation hereof, and any violation of said writ shall be punishable as a contempt."

Among other things, the petition alleges: That appellee is a corporation created and existing under the laws of Texas for the purpose of doing an express business in the state of Texas. That it is customary for railway companies and express companies to do business under contracts which provide, among other things, that the express companies shall pay to the railway companies a certain per cent. of the gross earnings from the business for the facilities and accommodations furnished and services rendered by the railway company. That a contract of the kind exists between appellant and American Express Company. That appellant received for free distribution certain trucks to be used by appellee in the conduct of its business and thereby induced appellee to believe that it (appellant) would permit appellee to go on its lines and conduct an express business thereover. That, relying on such action, appellee incurred expenses in the purchase of horses and equipment, the hiring of agents, renting of offices, etc. That, by reason of the refusal of appellant to permit it to go on appellant's lines, it was deprived of profits which it could have earned in the sum of $10,000 per month for five months. That it was also deprived of the value of the use of certain horses and wagons; and, further, that a conspiracy to prevent its doing business existed between appellant and American Express Company, and that the conduct of appellant in keeping it off the line was willful and malicious. That on February 12, 1913, it tendered to the railway company a written contract which it offered to execute, said contract being attached to its petition, marked "Exhibit A," and that said contract was declined by said railway company without any objection being made thereto or any offer to negotiate with appellee concerning the making of a contract between it and the railway company. That thereafter on or about the 26th day of May, 1913, it tendered two contracts to said railway company, the same being attached to its petition, marked Exhibits "B" and "C," respectively; the last-named contract providing, as compensation to the railway company, 55 per cent. of the gross receipts of the express business done by appellee over said railway company's lines. That in said last-named contract it was stipulated that the railway company should furnish the appellee such reasonable and equal facilities and accommodations upon reasonable and equal rates that the defendant railway company was furnishing to the American Express Company. That by a supplemental petition filed on June 4, 1913, in addition to the three contracts above referred to which it had tendered and offered to execute, it then offered to enter into any reasonable contract with appellant and to execute either of the three contracts referred to or a new contract, each of which should run for a period of 10 years from date, or for any other reasonable term, or that it would enter upon and conduct its express business on the lines of said railway company without any express contract in writing or other stipulation than the terms of the statute contained in article 6616 of the Revised

Statutes of 1911. Appellee further alleged that:

"Said defendant railway company has continuously refused, and still refuses, to enter into either of said contracts, or any contract, upon any terms with this plaintiff whereby this plaintiff might conduct an express business over the lines of said defendant railway company, and has refused to grant it the same facilities and accommodations upon the same rates that it charges the American Express Company for like services, or upon any rates."

The appellants answered by general and special exceptions and by special pleas questioning the validity of article 6616 of the statute quoted, and upon which appellee's suit is based: (1) Upon the ground that said article of the statute conflicts with the commerce clause of the federal Constitution; and (2) upon the ground that it violates article 1, § 19, of the Constitution of Texas, and section 1 of the fourteenth amendment to the Constitution of the United States.

Appellants also challenge appellee's construction of said statute, contending by exceptions that the petition states no cause thereunder, that the power to make the rates upon which the express business shall be handled is vested either in the railway companies or in the Railroad Commission, and that the relief prayed for is largely legislative in character and cannot be granted by the court. By their answers appellants also denied many of the allegations made by appellee and admitted others. Among those admitted by the railway company are the following:

"Defendant admits that * * * it has failed and refused to furnish plaintiff any facilities for handling the latter's express business upon any terms submitted by plaintiff; * * * that it has not desired to do business with plaintiff as an express company, and does not now desire to do business with plaintiff as such upon any terms submitted by plaintiff."

Upon the call of the case for trial, appellants presented their general and special demurrers. These demurrers were, by the court, overruled and appellants excepted. Evidence was then offered and heard in support of the allegations of appellee's petition. The case was submitted to the jury on special issues, and upon their findings judgment was rendered in favor of appellee against the railway company for actual and exemplary damages in the sum of $45,892.46; the sum of $37,892.46 of said amount being for actual damages, and $8,000 for exemplary damages, as found by the jury. Judgment was also rendered in favor of the appellee awarding it the writ of mandamus against the railway company as prayed for, and the writ of injunction against the American Express Company enjoining its agents and employés from interfering in any material manner with appellant in allowing and furnishing appellee the facilities and accommodations mentioned in the judgment.

[1] The facts alleged and the principal questions arising on the appeal are practically, if not identically, the same as those presented and decided by this court in an opinion delivered by Chief Justice Rainey at our last sitting, in the case of Trinity & Brazos Valley Railway Co. v. Empire Express Co., 173 S. W. 217. In that case, after a careful consideration of the assignments, the validity of the statute in question there and here was upheld and appellee's construction thereof sustained. A further discussion of the questions, or an attempt to add anything to what has been said in the opinion prepared by our Chief Justice, would be superfluous. For the reasons given in that opinion, we again hold that said statute is valid and that appellee's construction of the same is, in the main, correct.

[2] This brings us to appellants' forty-eighth assignment of error, which complains of the court's refusal to charge the jury to return a verdict in favor of the defendant railway company on the issue of damages. The proposition urged is that:

"Where an express company seeks the right to do an express business over the lines of a railway company under article 6616, Revised Statutes, but fails to bring itself within the terms of said statute—either because it seeks to do business not upon reasonable and equal rates but under a contract, or because it does not tender any business or any rates upon which to handle the same—no damages can be recovered by it from the railway company because of the refusal of the railway company to permit it to do such business."

This assignment will not be sustained. The appellee simply sought to do business upon reasonable and equal rates, such as were accorded to the American Express Company, the only express company doing business over the railway company's lines in Texas, and the railway company practically admitted in its answer that appellee had demanded that it furnish appellee reasonable and equal facilities to those being furnished said American Express Company for the conduct of its business, and that this had been denied. Besides, the jury found, in answer to an appropriate question propounded, that the railway company has not been willing at any time to accept appellee's express business upon any rates. Under these circumstances, it was not necessary, it seems to us, for appellee to prove a formal tender of its business to the railway company in order to recover such damages as resulted to it from the failure of the railway company to comply with article 6616 of the statute.

[3-5] The next assignment is, in substance, that the trial court erred in that part of its judgment wherein it awards appellee damages in the sum of $45,892.46: (1) Because the judgment does not show what part of the amount is actual damages and what part, if any, is exemplary damages; and (2) because there is no evidence in the record sufficient to sustain a judgment for damages, actual or exemplary, in any sense whatsoever, since the evidence fails to show that appellee ever brought itself within the terms of the statute upon which it relies, and fails to

show any malice whatever in the railway company's refusal to allow appellee to do business over its lines of road. This assignment will be overruled. The jury found that appellee was entitled to recover both actual and exemplary damages, and the amount of each kind, which they believed he was entitled to, is clearly stated in their answers to the questions submitted. Again, appellee's amended motion, based upon the findings of the jury, states the amount of actual and exemplary damages awarded, separately, and that part of the judgment of the court sustaining said motion is as follows:

"And the court, having heard and considered same, is of the opinion that said amended motion filed by plaintiff is well taken and should be granted. * * * It is therefore ordered, adjudged, and decreed by the court that the said amended motion filed by the plaintiff be and the same is hereby sustained, and in accordance therewith judgment is herein entered upon the special verdict of the jury. * * * It is adjudged and decreed by the court that plaintiff, the Empire Express Company, do have and recover of and from the Missouri, Kansas & Texas Railway Company of Texas, a corporation, the sum of $45,892.46," etc.

Doubtless, it would have been better had the judgment itself stated separately the amount of actual and exemplary damages awarded, but it is apparent from the record that the total amount of appellee's recovery is made up of the items of $37,892.46 actual damages, and $8,000 exemplary damages, which the jury said appellee sustained, and the failure of the judgment to show the amount of each item is not reversible error, if error at all. The contention that the expenses incurred by appellee in caring for its horses and other property, the loss sustained by reason of being deprived of the use of its property, the interest on the money deposited by appellee with the clerk of the court in obedience to an order of the trial court as a means of securing the right to do business over the railway company's lines of railroad, and the amount paid by appellee to its clerks, messengers, and other agents, while not permitted to do business, as shown by the evidence, are not elements of damages that can be recovered in a suit of this character, is not, in our opinion, sound. We think the several items of damages considered by the jury and going to make up the aggregate amount of damages which they concluded appellee had sustained were proper elements of its damages. Appellee had recently been organized and had not, before seeking to do business over appellant's lines of railway, been engaged in the express business. There was evidence showing, and the jury so found, that the appellant railway company accepted from appellee for transportation and distribution, free of charge, trucks to be used by appellee in its business to be transacted over said appellant's railway lines, and that said acts were reasonably calculated to cause an ordinarily prudent person, situated as appellee was at the time, to believe that said appellant intended to permit appellee to engage in the express business over its lines, and that relying upon said action of the railway company, and before appellee became aware that said company did not intend to permit it to do business over its lines, said expenses were incurred and losses sustained in getting ready to do an express business over the railway company's lines, as it had been led to believe it would be allowed to do. Under these circumstances, the expenses and losses allowed were proper elements of appellee's damages. Touching the issue of exemplary damages, it is sufficient to say that the jury found, in answer to a question submitting the issue, that the railway company acted maliciously in refusing to permit the appellee to transact an express business over its lines of railway and that there is evidence to sustain such finding. What we have here said disposes adversely to appellants of all of their assignments complaining of the court's action in admitting evidence concerning the several items of expenses incurred by appellee, and the losses sustained by it, to which we have referred, on account of the railway company's wrongful refusal to transport appellee's express business.

[6] If it be conceded that the depreciation in the value of appellee's horses is not a proper element of appellee's damages, the testimony admitted to show such depreciation becomes harmless and furnishes no ground for a reversal of the case, for the reason that the judgment rendered in favor of appellee does not, as we understand, include any sum for such depreciation.

[7, 8] Nor do we think the court erred in admitting in evidence the proposed contracts dated, respectively, February 15, May 21, and May 26, 1913, attached to appellee's amended petition as Exhibits A, B, and C. These contracts were admissible, we think, for the reasons urged by appellee; that is, for the purpose of showing what facilities and accommodations appellee had demanded that the railway company furnish it in order to conduct its express business and to show a willingness to obligate itself to operate over the railway company's lines upon the same terms and conditions as the American Express Company. It certainly devolved upon appellee to show a willingness to obligate itself to perform the same services for the railway company that the American Express Company performed under its contract, since such services were valuable to the railway company and necessarily entered into the reasonableness of the rate charged the American Express Company.

[9, 10] We are further of the opinion that there was no error in admitting in evidence the certified copies from the office of the Railroad Commission of Texas of the contracts between the American Express Company and other express companies doing busi-

ness in Texas, and the several railway companies doing business in said state. We agree with the views expressed by appellee's counsel concerning the admission of this evidence. As said by them, appellee having pleaded that the usual and customary rate charged express companies by railway companies being a percentage of the gross receipts derived from the express business, they were properly permitted to introduce in evidence the various contracts in question for the purpose of establishing such usage and custom. Each of said contracts was certified to by the secretary of the Railroad Commission as being true copies of the original contracts on file with the commission, and each showed on its face that the services rendered by the railway companies thereunder were similar to the services demanded by the appellee. It further appears that the Railroad Commission has established a rule requiring railway companies to file contracts made by them with express companies doing business over their lines of railway, and it would seem that such contracts are records of the commission's office within the meaning of article 3694 of the statute, and, the materiality of the evidence being apparent, certified copies of said contracts were admissible. It may be added that, to the bill of exceptions reserved to the admission of these contracts, the court appended the statement that, while the entire contracts were formally offered in evidence, no part of them was read to the jury or referred to during the trial, except the paragraph of each showing the rate charged for the accommodations and facilities granted thereunder.

An examination of the judgment rendered discloses that the appellee by it is adjudged to pay the railway company, as compensation for the facilities it is required to furnish, 55 per cent. of the gross receipts derived from its express business, and such percentage is as large, according to the contracts in question, as that paid by any express company for like services. This being true, it is difficult to see how the admission of that portion of said contracts in evidence which show the percentage of the gross receipts paid to railway companies by other express companies could have injured appellants.

[11] We are also inclined to think there was no error in admitting the testimony of the witness C. W. Davis, of which complaint is made in appellants' fifty-seventh assignment of error, to the effect that, about four months after the institution of this suit and during the progress of the trial thereof, appellee tendered express matter to the railway company for transportation, and that said company declined to accept the same. This testimony, it occurs to us, was admissible as tending to show that the railway company would not at any time have accepted the appellee's business at the same rate charged the American Express Company, and probably not at any other rate. But, however this may be, it seems that the testimony was harmless, because practically the same facts were testified to by other witnesses without objection.

Appellants' assignments of error from the fifty-ninth to the one hundred and seventh, inclusive, complain of the admission of certain testimony, certain portions of the court's charge to the jury, the overruling of certain objections to the qualifications of certain special charges requested by appellants, and the submission of certain issues to the jury. The questions raised and presented by these assignments have been determined against appellants by what we said in the opinion of Chief Justice Rainey, delivered a few days ago in the case of Trinity & Brazos Valley Railway Co. v. Empire Express Co., referred to in the former part of this opinion, and in what we have said in discussing other assignments of error in this opinion, and they need not be discussed again in the form now presented. We have considered these several questions with that care their importance demands and believe they have been correctly decided.

[12, 13] The remaining assignments assert, respectively, that the court erred in rendering the judgment entered herein, because the same is indefinite and uncertain, in that it does not indicate whether the appellant railway company is compelled to permit the appellee to enter and use the cars which have been set aside for the use of the appellant American Express Company, or is required to furnish other cars of similar kind for appellee; that, if said judgment purports to require the appellant railway company to permit the appellee to occupy the cars now used by the American Express Company, it is not in accordance with the pleadings; and that, if the judgment rendered reflects a proper construction of the statute, the effect of it would be to take from the American Express Company cars which had already been set aside lawfully to its use. We do not believe the matters urged under these assignments afford any serious objection to the court's judgment. We regard the objections more imaginary than real. The jury, upon evidence warranting it, found that the equipment now in use over the railway company's lines would be ample to accommodate both express companies, and their operation in such cars was practicable and would not create confusion. We do not think the American Express Company has the exclusive right to the use of the cars set apart to it, regardless of whether or not said cars are essential to the conduct of its business. In reference to the charge that the pleadings are insufficient to authorize the judgment rendered, it will suffice to say that we do not concur in this contention. As contended by appellee, the relief granted by the judgment is no broader

than that prayed for by appellee. Among other things, appellee prayed for:

"A writ of mandamus commanding and compelling the defendant railway company to furnish to this plaintiff reasonable and equal facilities and accommodations upon reasonable and equal rates that it has been and is now furnishing to the American Express Company. * * * And for such other and further relief, general and special, as plaintiff may be entitled to under the law and the facts."

We have been unable to discover, in the whole record, what we believe to be reversible error. On the contrary, after a careful consideration of the entire record and the many questions presented, we conclude that the pleadings, evidence, and law authorized the judgment rendered, and it is affirmed.

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes